Good morning. Good morning. It pleases the court. The injunction expressly did not determine that the interpleader fund was funds owed to no attacks. Therefore, the findings of contempt and bad faith must be reversed. Quote, The only ruling in respect, in this respect to date, is that the stop notice procedure invoked by King Construction was unconstitutional. And that was affirmed by this court. Quote, The district court did not, and in light of the settlement agreement will not, opine on whether, in the absence of the stop notice statute, King could have succeeded on its claims in the second stage. End quote. Now, this court also concluded that the injunction was permanent, partly because the purpose of interpleader is to avoid multiple actions where, quote, only a single obligation is owing. End quote. And that is the traditional purpose. But interpleader was allowed for a different purpose here. Traditionally, the injunction identifies a single obligation that is being interpleaded. For example, in National Union Fire Insurance versus Olympia Holding, a case that APMM cited in the district court, the injunction identified a single obligation. It barred, quote, commencing or prosecuting any action affecting the proceeds of the policy. Here, though, that did not occur. The actual purpose, according to the prior appeal, essentially was the same as the purpose of joiner parties under Rule 20, even though King and Noatex were not asserting a single obligation. That was allowed in footnote 9 and the discussion surrounding it. Now, the injunction ruling did not prohibit suing APMM for debts owed to Noatex. In the absence of the stop notice, King's claims were not seeking debts owed to Noatex. King claimed that Noatex and derivatively Cone Law was owed nothing by APMM on the contracts between Noatex and APMM. Unlike the traditional case like National Union, which enjoined prosecuting actions affecting the proceeds of the policy, the injunction here barred, quote, filing any proceedings against plaintiffs relating to the interpleader fund. And that's different because when the court concluded that Noatex and King had, quote, independently expressed their claims of entitlement, it knew the two claimants were not seeking a single obligation. They were claiming different debts independently of one another. Now, APMM never even claimed to be interpleading debts owed to Noatex. APMM admits, it even argues on January 5, 2012, that its complaint does not identify a single obligation. Quote, as disinterested stakeholder, APMM is not required to determine the status of King Construction under either section 85-7-131 or section 85-7-181. They make the same argument again on September 19, 2012, opposing distribution of the funds to Noatex. And in their amended complaint in paragraph 8, they incorporate by reference the initial complaint for interpleader. Those are two distinct remedies. They involve asserting different debts, as Judge Southwick explained to the en banc Court of Appeals panel in Sheep Creations. What I'd also like to point out is that Noatex and Cone Law cited Sheep Creations for a different point repeatedly, when it asked the court to dismiss the interpleader action, to deny the discharging injunction, and to distribute the funds. That was unsuccessful. But one holding of Sheep Creation is that interpleader by itself creates no rights. And the same principle applies now when it comes to enforcement, which is, according to Lee v. West Coast Life, quote, the purpose of the interpleader statute was to give the stakeholder protection, but in no wise to change the rights of the claimants by its operation, end quote. That principle applies here, because Cone Law was determined, was dismissed, absent a determination of the rights of Noatex, a determination that was never made. Well, you could have appealed that dismissal here, instead of going out to California in violation of the court's injunction. No, Cone Law moved to dismiss and said, and the court granted Cone Law's motion to dismiss, but then you lost your opportunity to seek those funds. What, Cone Law did? Right. Because the court here dismissed it because it was never determined whether Cone Law had a right to those funds. I mean, the basis of the dismissal was that until there's a determination that Noatex has a right in the fund, there's no reason to have Cone Law as a party in this lawsuit, because its claim is derived. In the amended complaint, APMM alleged that Noatex was a prime contractor and that King was a subcontractor. That's in paragraph five. But King denied that. King alleged that Noatex needed a Mississippi construction license, something that Noatex did not have. King also said, grant me summary judgment, because, quote, even assuming, arguendo, that Cone's contract with Noatex gives Cone the right to collect amounts owed to Noatex, there are no amounts legally owed to Noatex by APMM, and that right is meaningless as concerns this interpleader action. End quote. What was the total debt that was to be paid? In which case? Not your attorney's. You were engaged to help collect on this account, I suppose. What was your actual engagement? Well, it was the, actual engagement was related to the dispute between Noatex and King Construction. Noatex is the amount withheld from Noatex. What legal services were you performing to give rise to your claim for attorney's fees? Representation of Noatex in the litigation. Well, I understand that, but what was that, what was the issue there? Well, initially it was to attack the constitutionality of the stop-notice statute. I'm sorry. To attack the constitutionality of the stop-notice statute, you know. And so you, and, so I'm going to, so you, the attorney's fees that you would seek to recover from that initial engagement? Well, and then to assert that the funds should be distributed to Noatex. And that was after the stop-notice statute was declared unconstitutional. Noatex and later Cohen Law repeatedly asked the court to determine that the funds were funds owed to Noatex and that they should be paid to Noatex. And the court refused to make that determination. All right. Okay. Now, I'm going to move on to talking about what the correct rule for finding contempt should be. There cannot be flexibility in the rule that makes it arbitrary. For example, the district court in JSI Communications held that Travelers was discharged from, by the interpleader judgment. But as this court viewed the question, the exact source of McMillan-Pitts' liability to which Travelers is referring is unclear. Now here, the district court in Mississippi used the evidentiary hearing to interpret and construe the phrase relating to the interpleader fund, which is in the injunction, which is a question of law and not fact. And it's the same question of law that the California district court found that it was solving that question needs to be based on the four corners of the injunction. This is the flip side of the rule in Mineworkers v. Bagwell. Civil contempt cannot be employed when deciding the alleged contempt would require, quote, elaborate and reliable fact-finding, end quote. And let's be frank, the evidentiary hearing in this case had nothing to do with determining the conduct of Cohen Law Group. The California court already set out what the First Amendment complaint clearly alleged. That is, the purpose of the amendment was to allege that the amount owed to Noatex was not interpleaded, whereas the original complaint indicated that it was, end quote. And the unpaid amount of that indebtedness was alleged to be $260,410.15. Since doing that wasn't barred by the four corners of the injunction, there is no contempt. There's also no abuse of the litigation process as a matter of law. The point I'm making was underscored in the JSI case. Because the defendant travelers did not maintain that JSI's claim was precluded under res judicata or collateral estoppel, that's in footnote 5 of JSI. You cannot have res judicata without a final judgment on the merits. And there is no final judgment in an interpleader case if there are independent liabilities being claimed until and unless there is a determination of rights to the fund. And all of that argument by Cohen Law is in pages 8157 to 8161 of the Record on Appeal. But the point I want to underscore is that APMM asked the California court to decide those defenses. Despite there being no determination in Mississippi concerning any rights and no attacks. That's in the second and third affirmative defenses in their answer, which is in tab 14 of our record excerpts. And again, when APMM asked the California court to deny summary judgment. Therefore, the California action was the proper form for the parties to be litigating those defenses. I'd like to reserve the remainder of my time for rebuttal. Well, you don't get the part you're leaving us, but you do get your 5 minutes. Okay, well, it did put 15. Huh? I had asked for 5. Right, so you have 5 minutes left for rebuttal. Okay, thank you. I'm just saying you don't get to add the 334 to the 5. Oh, well, the reason I was doing that is because I would have kept going, but it said 15. I thought I better have 15 and 5. Yes. I apologize. Okay. Well, can I add a few more things? No, I'm sorry. You're stopped. No, no, no. Please, please. You have your time. I don't think it'll take the remaining 3 minutes. All right. The one other point I want to make, or two. Let me talk about the one thing the district court never addressed, which is the due process objection for opposing any interpleader of debt so to no tax. In the contempt ruling, the district court in Mississippi concluded that debt so to no tax were frozen, not only by section 181, but also by section 131 and 135. First of all, that violated this court's mandate in the prior appeal not to determine King's claims in the absence of notice under 181. Second, that conclusion makes 131 into the same thing as 181, which is unconstitutional on its face. Now, APMM doesn't defend that interpretation of 131. They can't because it's flat wrong. What my opponents argue is that King was asserting that APMM, what APMM calls an equitable claim on the debts owed by APMM to no tax. But King never made that argument. And I assume that's because of sheet creations, which rejected it. Regardless, the due process violation is the same, no matter if you call it a lien or an stop-notice or whatever. If it interferes with no tax's right to be paid by APMM, the very same due process requirements are implicated. The Supreme Court stated in Connecticut v. Dorr, said that in Connecticut v. Dorr, and this court relied on that in validating the stop-notice law. The injunction aborted that question by not deciding, by deciding to postpone the question of no tax's entitlement to the fund. If you agree with me, you can also avoid that question, that there is no basis to impose sanctions under the injunction as written. Now, the monetary sanctions here were punitive. You can tell the district court's purposes were punitive because it said so. The court invoked its, quote, ability to punish contempt. And its, quote, power in the tribunal to punish the offender. This is, and we also argue in our brief, that the duplicative nature of the attorney's fees and the refusal to allow common law to brief the attorney's fees additionally shows the punitive nature of the sanctions. That is a separate reason for reversal. Actually, a contempt order must be set aside if it cannot be determined with adequate assurance whether it is civil or criminal in nature. That was the holding of this court in Thyssen v. S. S. Twin Owen, which is at 693 F. 2nd, 1171. Thank you. Good morning. My name is Martha Stigall and I am counsel for Auto Parts Manufacturing Mississippi. The court did not err in holding that Cone Law Group was in contempt. A quote from the hearing that was held by the court prior to ruling that Cone Law was in contempt. Mr. Cone testified, quote, up until the settlement between Noatex and King Construction, Noatex took the view that APMM interpleaded, meaning deposited, debts that were owed from APMM to Noatex. APMM was discharged in March of 2014. The settlement between King Construction and Noatex occurred approximately seven months later, in October of 2014. Up until that point, Mr. Cone testified that Noatex considered the interpleader fund to be money that had been owed by APMM to Noatex, and indeed that's what it was. There was never any question of what the interpleader fund was. The interpleader fund was money that had been bound by the stop notice that King Construction had served upon APMM that was recognized by Noatex through multiple motions requesting that the interpleader be dismissed and the funds be distributed to it expeditiously. Noatex's argument recognized this when it said, you have to distribute the money to me because the stop notice has been declared unconstitutional. The only basis that was holding the money. Therefore, it has to be distributed. And the court said no. Well, we have said, well, we have recognized that the stop notice is unconstitutional. King Construction, as your subcontractor, still, as your unpaid subcontractor, still has an equitable right and therefore still has an adverse claim to the money. Not an independent, non-adverse claim. Independent because it was on a different basis. It was because arguing that Noatex owed it, whereas Noatex was saying APMM owes me. It was the derivative nature of King Construction's claim that provided it the equitable basis and the adverse claim which made interpleader appropriate as this court has already affirmed and upheld in the 2015 decision. The court, Noatex's counsel opposite stated that Noatex repeatedly asked the court for a determination of whether or not it had any rights in the fund.  It did repeatedly file motions, but the motions were always, this is our money that was bound by the stop notice and since the stop notice is thrown out, you have to give it to us. And that never occurred. Saying that the district court improperly decided what the fund was is incorrect. The fund was what it was, stopped by the stop notice. Again, Noatex and Cone Law confused, and Cone Law continues in this appeal to confuse the first and second phases. Whether or not King Construction, had there been no settlement, who would have been entitled to the money? Would King Construction's equitable claim have prevailed or not? That does not, the fact that there was a settlement in no way nullified what the interpleader fund was, in no way nullified the injunction. If it did, then what was the injunction? What did the injunction protect? What value did the injunction have? The argument that is put forward by Cone Law Group is that, well, since we settled it, it caused the interpleader fund to become undefined. We don't really know what it was. It might have been money that King said was owed to it directly by APMM. King never argued, never litigated that it had a claim directly against APMM. The materialman's lien and stop notice took the alternative positions as this court noted in footnote one of the 2015 opinion. It took alternative positions. Either we're owed it directly from APMM because NOAA Techs was acting as its agent, or we had a contract with NOAA Techs and were owed it directly by NOAA Techs. When the litigation commenced, the answer to the original complaint contained the cross-claim saying, we are a subcontractor. We are owed the money from you, NOAA Techs. You should pay us that. There were never separate claims. Had there been separate claims, then this court never would have, and nor could the district court have, affirmed the interpleader on the basis that there were adverse claims that were independent only in the nature as is recognized by 28 U.S.C. 1335B that they can have an independent basis that they can be adverse claims. The settlement did nothing to take away the protection that the injunction had afforded to APMM. As the district court stated in its opinion, holding Cone Law Group in contempt, the first amended complaint that was filed by Cone, well let me back up, the original complaint that was filed by Cone Law, Cone Law acknowledges, sought the interpleader fund, acknowledges sought the interpleader fund and therefore would have been in violation. APMM moved to dismiss it. Cone Law Group opposed that motion, and in opposing it, we submit, violated the injunction. When you oppose the dismissal of a lawsuit that you acknowledge sought the interpleader fund, you necessarily are violating the injunction. When it filed the first amended complaint as the district court set out in detail in its opinion, the very allegations of the first amended complaint showed that it sought the interpleader fund, which was a defined amount of money, being what was stopped by the stop notice. The first amended complaint says we're going after the money that was stopped by the stop notice by King Construction. That is clearly a violation of the interpleader injunction. Council for APMM wrote Council for Cone Law Group and said this is a violation of the injunction. If you don't stop it and if you don't dismiss the California case, you're in contempt and we will pursue that to no avail. The California case continued to proceed. The California court's allowance of the filing of the first amended complaint, which is so heavily relied upon by Cone Law Group, did not, as Cone Law Group portrays it, did not give blessing to the first amended complaint to say that you're correct. It does not violate the interpleader. All that the California district court said was at this early juncture in the lawsuit, under a 12B6 standard where I'm looking at the allegations of the complaint, I will take as true the allegations of the complaint that it is not seeking the interpleader fund and is not in violation of the injunction. It did not give any kind of protection or cover to Cone Law Group for continuing to proceed. Now it did say, you know, I can't say otherwise because the Mississippi court never conducted the second phase, never determined who the fund was entitled to. That's not saying, as Cone Law Group interprets it, it is not saying, well, the interpleader fund was therefore an undefined fund and may or may not have been what was stopped by the stop notice. It's simply saying that I can't at this point, at this 12B6 point, say definitively because the settlement prohibited the lower court, the lower court from proceeding with the second phase of interpleader. And in fact, the first amendment complaint was in violation of the interpleader injunction. The interpleader injunction, which did contain an unequivocal command. It was not vague. Under the four corners of the interpleader injunction, it says, do not file anything that's relating to the interpleader fund. Which is precisely what the first amendment complaint did and was in violation of the injunction. As a result of which, APNN proceeded to file a motion asking the Mississippi District Court to enforce the injunction because of Cone Law Group's content. After the day-long hearing, the District Court did just that. We submitted to the District Court under the abuse of discretion standard. It was not merely that he didn't abuse his discretion. It was that, as the court pointed out, the very pleadings, the very allegations of Cone Law Group proved that it was pursuing the interpleader fund. That is, the funds that had been bound by the stop notice and which remained at issue because of the that survived even after the stop notice was declared unconstitutional. I'm going to briefly address the JSI case since it was touched on by counsel opposite. The JSI case is completely distinguishable. It dealt with a writ of garnishment against a general contractor who owed a sub $19,000. The $19,000 was interpleaded and it was released. The discharge, the general contractor was discharged and released as to the $19,000. The issue in that case, of course, was well, wait, there's this other public bond out there. The general contractor was discharged. The bond money, that bond money, was not at issue in the interpleader. This court said the interpleader protected and released from liability, not merely from the case, but released from liability as to the stake. Only what was at issue in the interpleader fund, only what the stake there was, and the stake there was only the $19,000 that had been interpleaded, not the separate amount that was available under the bond money, excuse me, under the policy that protected the general contractor. The court likewise did not abuse its discretion in imposing both coercive and compensatory sanctions. They were not punitive. The coercive sanctions, of course, eventually did exactly what they were designed to do. They coerced compliance with the injunction through dismissal of the California lawsuit only after both the district court and this court refused to stay the imposition of daily fines. Once that occurred, fines were paid and the California case was dismissed. It also did not abuse its discretion in awarding compensatory sanctions. Compensatory sanctions have long since been recognized as being awardable under the court's inherent authority, either for civil contempt and or for bad faith litigation. What's the status of the money  There is no money in Mississippi. It was all distributed and it all went to attorneys. No, I'm sorry. There is no money there. It all went where? Where did it go? My understanding is that it went to attorneys for no attacks. What attorneys? I believe Cone Law Group and the Mississippi Council that represented that was co-counsel with Cone Law Group in the Interpreter case. But for Did anybody get anything other than a lawyer? Not to my knowledge, sir. Well, that's a nice proceeding. Yes, sir. Now, bad faith, the lower court here said that Cone Law Group acted in bad faith and it's Is it the case that the Cone Law Group in California moved for summary judgment and filed in support of the summary judgment the same invoices that it presented to the Mississippi Court? I'm sorry. Say that again. Is it the case that the Cone Law Group in California moved for summary judgment and filed in support of its motion for summary judgment invoices, the same invoices that it had presented to the Mississippi Court earlier? Oh, absolutely. Absolutely. It's the same that the invoices in the statement that were attached to no attacks in Cone Law Group's response to King's motion for summary judgment and where Osamu Nishiyama, the president of NOAA Tech, says we are going after what we want is $260 under that statement that's still remaining owed. You've paid us $17,000 and you've paid us another $35,000 but we're still owed this $260. That's what we want and that's what we're entitled to because that's the interpleader fund and the interpleader fund belongs to us. Those are the Well, under the terms of their engagement they were entitled to the I'm sorry? How were those fees earned under their engagement letter? Well, the engagement letter says that it's in a dispute that he's engaged for a dispute with NOAA Tech. I mean, I'm assuming that the fees were earned as a part of the declaratory judgment action and the fight in the interpleader action over getting the money. By January 2013, NOAA Tech had filed seven motions that asked the court insisted that the lower court distribute the interpleader fund to NOAA Tech as being owed to NOAA Tech and against which King Construction had no valid claim. So I'm assuming that the fees were earned both in the declaratory judgment action and as part of the interpleader action says that it's being retained to represent NOAA Tech's interdispute Well, has the Cone Law Group been paid any money at all? I'm sorry? Has the Cone Law Group been paid any of its fees? Out of the interpleader fund. I'm sorry? Out of that portion of its interpleader fund. And how much was that? The interpleader fund that was distributed to NOAA Tech's Cone Law Group was approximately $150,000. Under the settlement, King Construction took $109,000. I believe the way the settlement was we're going to split it evenly but King they agreed that King owed some money to NOAA Tech and so the actual distribution was not split evenly $150,000 to NOAA Tech's and Cone and $109,000 to King Construction. Another thing about the engagement agreement and what does the lien own? The lien of Cone Law Group which gives it standing to pursue APMM in the California case says it says this expressly in its First Amendment complaint the only thing we have a lien own is the money that was bound by the stop notice and in its engagement agreement the lien pertains to money received pursuant to settlement or compromise. But the First Amendment complaint never really said what money it was going after. It just said the unpaid portion of what was in the stop notice. I don't know if they're saying $260,000 less the $150,000 that we got through settlement. I don't know what they were contending that it was. All that we know is that they did file a motion for summary judgment against APMM asked the court to proceed with it forthwith notwithstanding being held in contempt at that point to award Cone Law $260,000 based on the very same invoices that were relied upon in the interpleader case. APMM APMM met its burden of proving by clear and convincing evidence that the permanent injunction was in place, that the order prohibited pursuing APMM filing pleadings related to the interpleader fund and that Cone failed to comply with that by pursuing the California litigation The facts found by the District Court constituting contempt was not an abuse of discretion finding that the interpleader fund was the money stopped by the stop notice was not so much a finding as a fact. That's what it was. I think as recognized by this court in the 2015 opinion as the District Court said Cone Law Group's argument that it was not violating the fund excuse me, was not violating the injunction was utterly nonsensical we ask that the District Court's orders be affirmed Now APMM just argued that mentioned the fact that NOVATEX had quote taken the view as to what the interpleader fund was. But APMM took the opposite view so did KEEN In APMM's memo in response to NOVATEX's motions to dismiss it said not only has KEEN Construction served APMM with a stop notice in KEEN's construction capacity as a subcontractor as part of the notice KEEN Construction also included a construction lien under 85-7-131 apparently contending that it also stands in some fashion as a contractor of APMM with equal status to NOVATEX and necessary privity to sue APMM for the disputed sum. It clearly raised two claims an independent and dependent claim In APMM's memo in support of its motion for discharge at page 3 it also said that the claimants KEEN Construction on one side and for now NOVATEX common law group on the other each claim that the other has no right in the funds as a result of events that occurred after the interpleader action was filed. It is irrelevant to whether APMM is entitled to discharge instead those arguments will be relevant to the second stage of interpleader when the court determines the respective various claims for the fund APMM although APMM just told the court that there was never any question that it was a disputed that they were the same obligation those two statements from APMM show exactly the opposite and in fact NOVATEX argued to this court in the last appeal that they were different obligations and this court in footnote 9 noted they don't have to be the same obligation to allow for interpleader and it went on to hold explicitly that we're not going to reach the question of KEEN's claim to the fund what was KEEN's claim to the fund? that NOVATEX was owed nothing those two claims are independent which brings this case into the realm of Lee and Tashire one of the things that Ms. Stegall just argued was that what does the injunction get you if it doesn't prevent this case well Lee and Tashire tell the court the answer to that if there are independent debts the injunction can be enforced where the amount of the fund is sufficient to pay both debts otherwise the injunction is limited to the fund what's the purpose of the California litigation? well one of the things that was discussed in the argument you're down in Mississippi litigating and fighting out trying to sort out all these problems and then you go file in California well the California action had been filed earlier and had been stated when the decision in this court was handed down the California court directed the parties to address its effect APMM contended that it should be dismissed and NOVATEX in co-law argued asked to allow this complaint to be amended which APMM did not object to they then filed a motion to dismiss that complaint and the court denied it, thus there's no contempt if that court can look at that complaint and say there is I can't say as a matter of law this violates the injunction two judges have disagreed and there can't be a civil contempt go back to the one with the first California action filed well the when did you file the California action um that is in the record I don't know the actual date when that was filed in relationship to the was the interpleader filed first in Mississippi or did you sue first in California I believe that the interpleader was filed first is it ok if I yeah alright get your story straight I don't know the answer to that your honor I don't need to take the thunder from my counsel the interpleader case was filed on November 15 2011 naming King and NOVATEX as defendants  that's Mississippi the money was deposited and then refunded to APMM's lawyers at the time in September of 2012 when the lawsuit was filed in California no money was on deposit anywhere it wasn't clear that there ever would be money deposited again the cone law group sued and at that time alleged that the amount of the interpleader deposit was debt owed to NOVATEX however King argued that it was not and injunction was rendered without making that determination I believe that would be all thank you alright counsel thank all three of you for that explanation we'll take a brief recess before the third case